MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: ANNA E. ARREOLA
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2218



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
                                        :
UNITED STATES OF AMERICA                :
                                        :
        -v-                             :
                                        :
ALL RIGHT, TITLE AND INTEREST           :
IN REAL PROPERTY LOCATED AT             :
23 WEST 31ST STREET,                    :
NEW YORK, NEW YORK 10001, WITH ALL      :   VERIFIED COMPLAINT
IMPROVEMENTS, APPURTENANCES, AND        :
ATTACHMENTS THEREON,                    :
                                        :
        Defendant-in-rem.               :
                                        :
- - - - - - - - - - - - - - - - - - - x

JUDGE STEIN

08 CV 3049

        Plaintiff United States of America, by its attorney,

Michael J. Garcia, United States Attorney for the Southern

District of New York, for its verified complaint alleges, upon

information and belief, as follows:

                I. NATURE OF THE ACTION

        1.    This is an action by the United States of America

seeking forfeiture of all right, title and interest in the real

property located at 23 West 31st Street, New York, New York

10001, with all appurtenances, improvements and attachments

thereon (the "DEFENDANT PROPERTY"). The DEFENDANT PROPERTY is

subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), as

property involved in money laundering transactions conducted in
violation of 18 U.S.C. §§ 1956 and 1957, and pursuant to 21
U.S.C. § 881(a)(7), as property used, and intended to be used, to
facilitate the commission of a felony narcotics violation of
Title 21, United States Code, Subchapter I.

## II. JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C.
§§ 1345 and 1355.

3.    Venue is proper pursuant to 28 U.S.C.
§§ 1355(b)(1) and 1395 because acts and omissions giving rise to
the forfeiture took place in the Southern District of New York
and because the DEFENDANT PROPERTY is located in the Southern
District of New York.

## III. PROBABLE CAUSE FOR FORFEITURE

A.    THE BLACK MARKET PESO EXCHANGE

4.    The need to launder narcotics dollars arises out
of the massive amounts of cash generated by sales of drugs --
mostly cocaine and heroin -- in the United States.  These
narcotics are sold in the United States for United States
dollars, almost always in cash, and often in small denominations.
Reporting and record-keeping requirements mandated by statute and
regulation prevent drug dealers from simply depositing those
funds into accounts in the United States and transferring them to
Colombia or other countries, so drug traffickers must disguise,

2

or "launder," the funds in order to hide their true source.

      5.   The Black Market Peso Exchange ("BMPE") is one method used to launder drug money and evade the record-keeping and reporting requirements mandated by law, as well as South American foreign exchange and import laws and tariffs. The basic BMPE scheme operates as follows. Drug traffickers who possess cash drug proceeds generated in the United States contact a third party -- generally referred to as a "peso broker" -- who agrees to provide local currency, such as Colombian pesos, for the cash narcotics proceeds. A two-stage exchange is then arranged: in the United States, the broker's representatives pick up the cash narcotics proceeds -- often hundreds of thousands of U.S. dollars or more at a time -- from the traffickers' representatives; in South America, the broker pays the traffickers the corresponding amount (less the broker's commission) in the local currency. Once this exchange occurs, the traffickers have effectively laundered their money and are out of the BMPE process. The peso broker, on the other hand, must now do something with the U.S. dollars that he has obtained in the United States so that he can obtain more pesos to begin the process again. In other words, the peso broker, who now has a pool of narcotics-derived funds in the United States, must find persons or businesses willing to buy U.S. dollars for pesos.

      6.   Businessmen that want to buy dollars and that have

pesos to sell then make arrangements with the peso broker.  A businessman who needs dollars to fund an offshore investment account, or to pay a U.S. company for goods or services imported into Colombia, for example, might go to a broker to buy dollars instead of the overt Colombian banking system.  By doing so, the businessman can get better exchange rates than from the banks and can avoid Colombian currency transaction reporting requirements and paying certain Colombian import and exchange tariffs.  Once the businessman pays the broker in pesos, the peso broker will direct that the dollars he has accumulated from the traffickers and put into the banking system be sent, usually by wire transfer, to wherever the sellers want them transferred.

7.    All three parties involved in the BMPE process thus benefit:  the traffickers receive laundered pesos; the importers have purchased goods with cheap dollars; and the peso broker makes his profits on the spread between the price that he buys and sells the dollars.

8.    The BMPE process may also involve more than one peso broker.  One broker, for example, might have the direct relationship with the cartels in South America; another might have the contacts in the United States who can accumulate the narcotics proceeds; and yet a third might have the contacts with the South American businesspeople who want dollars and have pesos to sell. Irrespective of how many intermediaries there are, the result is

the same: local currencies are used to buy narcotics proceeds in U.S. dollars.

B.    THE DEFENDANT PROPERTY

        9.    The DEFENDANT PROPERTY is a multistory building with offices and a warehouse on the ground floor and apartments on the upper floors.

        10.    From at least in or about 1997 through the present, Miranda Travel Freight Forwarders Corporation ("Miranda Travel")-- a business that ships goods to places outside the United States-- has occupied and operated out of the DEFENDANT PROPERTY.

        11.    The Chairman or Chief Executive Officer ("CEO") of Miranda Travel is Wenceslao Miranda, a/k/a Juan Miranda ("Miranda"), who runs the company.  The address for Miranda Travel, as reported to the New York Department of State ("DOS"), is the DEFENDANT PROPERTY.

        12.    From at least in or about 1997 through at least in or about March 2006, Miranda knowingly helped launder, at the DEFENDANT PROPERTY, millions of dollars in narcotics proceeds on behalf of a money laundering organization based in Venezuela.  The DEFENDANT PROPERTY was used to help launder drug proceeds in several ways.

        13.    First, from at least in or about 1997 through in or about March 2006, individuals dropped off large quantities of cash narcotics proceeds, often in the tens of thousands of dollars, to

5

Miranda at his office in the DEFENDANT PROPERTY.  The cash would typically consist of small denominations bundled in rubber bands, by denomination.  This is a common method used by drug traffickers to package money.

14.  Individuals dropping off the money would tell Miranda that the money was "on behalf of" someone else.  Miranda would either hold the money for someone else to pick up, use the money as a payment for shipping merchandise, or use the money to purchase merchandise for shipment overseas.

15.  In addition, Miranda would receive instructions over the phone, at the DEFENDANT PROPERTY, about cash deliveries that he was going to receive at the DEFENDANT PROPERTY and what he needed to do with the cash.  When discussing money transfers over the phone, Miranda would use coded language, referring to the money as, among other things, "pantalones" ("pants"), "cajas" ("boxes"), and "docenas" ("dozens").  When communicating over the phone that he had received a cash delivery, Miranda would say that he had received a "transferencia" ("transfer").

16.  Speaking in coded language about business dealings is one method used by drug traffickers and money launderers to avoid detection by law enforcement, who may be using court-authorized wiretaps to intercept telephone communications.

17.  The DEFENDANT PROPERTY was also used to facilitate money laundering and drug trafficking because it served as a

6

meeting place for individuals needing to exchange, in person, large quantities of cash drug proceeds. For at least several years, these drop offs occurred on weekly basis or more. At one point, there was a public phone inside the DEFENDANT PROPERTY that individuals used to arrange money transfers.

18. In addition, the DEFENDANT PROPERTY contains bedrooms at which individuals involved in the money laundering organization have stayed.

19. One of the individuals who dropped off money to Miranda at the DEFENDANT PROPERTY was an individual ("CC-1") who was later convicted of money laundering. In or about 2000 through in or about 2001, CC-1 dropped off thousands of dollars in cash drug proceeds on a weekly basis, including amounts of fifteen and twenty thousand dollars. He would tell Miranda that the money was on behalf of someone else.

20. In or about 2006, CC-1 pled guilty in New York County Supreme Court to money laundering in the second degree, in violation of New York State Penal Law 470.15(1), for which he was sentenced to one year of imprisonment. One of the elements of this offense is knowledge that the property involved the proceeds of criminal sale of a controlled substance.

21. In December 2007, Miranda was charged by a New York State grand jury with, among other things, money laundering in the third degree, in violation of New York Penal Law Section

470.10(1)(a)(ii)(A).  This subsection makes it unlawful to engage in a financial transaction knowing that the property involved in the transaction represents the proceeds of the criminal sale of a controlled substance and knowing that the transaction in whole or in part is designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct.

22.   Title of the DEFENDANT PROPERTY is held in the name of FRJD Corp. ("FRJD").  Miranda is the Chairman or CEO of FRJD, and the address for FRJD, as reported to the DOS, is the DEFENDANT PROPERTY.  FRJD was founded in or about October 26, 1995, and it acquired the DEFENDANT PROPERTY in or about April 1996.  Miranda is also the Chairman or CEO of JM Cargo Corp., which also reports its address to the DOS as the DEFENDANT PROPERTY.

IV. CLAIMS FOR FORFEITURE

23.   The DEFENDANT PROPERTY is subject to forfeiture pursuant to the following statutory provisions:

**Title 18, United States Code, Section 981(a)(1)(A)**

24.   Title 18, United States Code, § 981(a)(1)(A) subjects to forfeiture "[a]ny property real or personal involved in a transaction or attempted transaction in violation of . . . section 1956, 1957 . . . of this title, or any property traceable to such property."

25.   Title 18, United States Code, § 1956(a) provides:

8

(a)(1) [w]hoever knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity –

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or (ii) with intent to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B) knowing that the transaction is designed in whole or in part -- (i) to conceal or disguise the nature, the location, the source of ownership, or the control of the proceeds of specified unlawful activity; or to avoid a transaction reporting requirement under State or Federal law.

26. A "financial transaction," as defined by 18 U.S.C. § 1956(c)(4), includes "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments . . . ."

27. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense under 18 U.S.C. § 1961(1). Section 1961(1) lists as an offense "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States."

28. Title 18, United States Code, § 1957 provides, in pertinent part:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).
>
>         \*      \*      \*
>
> (d) The circumstances referred to in subsection (a) are --
>
> (1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States . . . .

29. The DEFENDANT PROPERTY is subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.

### Title 21, United States Code, Section 881

30. Title 21, United States Code, § 881(a)(7) subjects to forfeiture:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of [Subchapter I of Title 21] punishable by more than one year's imprisonment . . . .

31. The DEFENDANT PROPERTY is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because it is property used or intended to be used in any manner or part to commit or to

facilitate the commission of a felony violation of Subchapter I of Title 21, United States Code.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the DEFENDANT PROPERTY and that all persons having an interest in the DEFENDANT PROPERTY be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the DEFENDANT PROPERTY to the United States of America for disposition according to law and that this Court grant plaintiff such further relief as this Court may deem just and proper together with the costs and disbursements in this action.

Dated:    New York, New York
          March 20, 2008

MICHAEL J. GARCIA
United States Attorney for Plaintiff
United States of America

By: _____
ANNA E. ARREOLA
Assistant  United  States  Attorney
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2218

11

VERIFICATION

STATE OF NEW YORK            )
COUNTY OF NEW YORK           :
SOUTHERN DISTRICT OF NEW YORK )

MARLOW LUNA, being duly sworn, deposes and says that he
is a Special Agent with the Drug Enforcement Administration
("DEA"); that he has read the foregoing complaint and knows the
contents thereof, and that the same is true to the best of his
knowledge, information and belief.

The sources of deponent's information and the grounds
of his belief are his personal involvement in the investigation
and conversations with and documents prepared by law enforcement
officers and others.

MARLOW LUNA
Special Agent
Drug Enforcement Administration

Sworn to before me this
20th day of March, 2008

Notary Public

LESLEY B. GLENN
Notary Public, State of New York
No. 01GL4654537
Qualified in New York County
Commission Expires 6/30/11