UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                        Plaintiff,

        -against-

ALL RIGHT, TITLE AND INTEREST IN REAL
PROPERTY LOCATED AT 23 WEST 31ST STREET,
NEW YORK, NEW YORK 10001, WITH ALL
IMPROVEMENTS, APPURTENANCES, AND
ATTACHMENTS THEREON,

                    Defendant-in-rem.
-------------------------------------------------------------------X

Index No.:  08 CV 3049

NON-PARTY CLAIM

(Stein, Sidney H.)

STATE OF NEW YORK    )
                         .ss:
COUNTY OF NEW YORK  )

        Maria J. Zetes, being duly sworn, deposes and states as follows:

        1.     I am Assistant Counsel for non-party claimant, Emigrant Funding Corporation ("EFC") and I am duly authorized to make a claim on its behalf to the subject property.

        2.     EFC has a mortgage interest in the property described in the Mortgage Note and the Mortgage and Security Agreement, copies of which are annexed hereto as Exhibit A and B, respectively.

        3.     EFC demands its restitution and the right to defend the action.

                                          MARIA J. ZETES (MZ-2906)
                                          Attorney for Emigrant Funding Corporation
                                          5 East 42nd Street
                                          New York, New York 10017
                                          (212) 850-4852

SWORN to before me this
19th day of August, 2008.

Notary Public

LINDA YOUNG
Notary Public, State of New York
No. 01YO5067926
Qualified in Nassau County
Commission Expires October 28, 2010

TO:    Michael J. Garcia
        United States Attorney for the
        Southern District of New York
        Attn: Anna E. Arreola
        Assistant United States Attorney
        One St. Andrew's Plaza
        New York, New York 10007

EXHIBIT A

# MORTGAGE NOTE

**$150,000.00**

**New York, NY**
**Dated: February 17, 2005**

**MORTGAGE NOTE** (hereinafter, the "**Note**") made this 17th day of February, 2005, by **F.R.J.D. CORP.**, a New York corporation having an address at 23 West 31st Street, New York, New York 10001 (hereinafter, the "**Maker**") for the benefit of **EMIGRANT FUNDING CORPORATION**, or its successors or assigns (collectively, the "**Payee**"), a New York corporation having offices at 6 East 43rd Street, New York, New York 10017.

      **FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at 6 East 43rd Street, New York, New York 10017, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of **ONE HUNDRED FIFTY THOUSAND and 00/100 ($150,000.00) DOLLARS**, together with interest thereon at the Interest Rate (as hereinafter defined), calculated in the manner hereinafter set forth from and including the date of this Note to the date this Note is paid in full, as follows:

      Interest only commencing on the date hereof and ending on the last day of the month of this Note. Commencing on the 1st day of April, 2005 and on the first day of each consecutive month thereafter throughout the term of this Note, constant monthly payments of **$1,327.36**, representing interest at the Interest Rate and principal. On the Maturity Date, the entire Debt then remaining unpaid shall immediately become due and payable. Each monthly payment shall be applied first to interest at the Interest Rate with the balance to principal.

For the purposes of this Note, these terms shall be defined as follows:

1.      The term "**Interest Rate**" as used in this Note shall mean:

      From the date hereof to the Maturity Date, the Interest Rate shall be **six and three-quarters (6.75%) percent** per annum; and

2.      The term "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

3.      The term "**Maturity Date**" as used in this Note shall mean the earlier of (i) **March 1, 2020**, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable

4.      The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Mortgage or Other Security Documents.

5.  The term **"Mortgage"** shall mean that certain Mortgage and Security Agreement dated the date hereof in the principal amount of **ONE HUNDRED FIFTY THOUSAND and 00/100 ($150,000.00) DOLLARS**, affecting premises located at **23 West 31st Street, New York, New York.**

6.  The term **"Other Security Documents"** shall mean any of the documents other than this Note or the Mortgage, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the Loan.

7.  The term **"Loan Year"** for each year during the term of this Note shall be from March 1 to either (x) February 28, or (y) February 29 in the event of a leap year, except that the first (1st) Loan Year shall be from the date hereof through and including February 28, 2006, and the fifteenth (15th) Loan Year shall be from March 1, 2019 through and including March 1, 2020.

The interest payable under this Note shall be calculated for the actual number of days elapsed on the basis of a three hundred sixty (360) day year and shall be payable monthly, in arrears, on the first (1st) day of each month and at maturity. The charging of interest on the basis of a three hundred sixty (360) day year results in the payment of more interest than would be required if interest were charged on the basis of the actual number of days in the year, and the calculation and payment of interest as set forth above will result in an unpaid Principal Balance which shall be payable on the Maturity Date.

It is hereby expressly agreed that the entire Debt shall become immediately due and payable at the option of Payee on the happening of any default or event by which under the terms of this Note, the Mortgage or the Other Security Documents, the Debt may or shall become due and payable, and that all of the terms, covenants and provisions contained in this Note, the Mortgage or the Other Security Documents which are to be kept and performed by the Maker are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein. The Payee hereof may exercise this option to accelerate during any default by the Maker regardless of any prior forbearance.

If any installment of principal, interest or other sums due hereunder or under the Mortgage or any Other Security Document are not paid within ten (10) days after the date on which same are due, the Maker shall pay to the Payee a late charge of five (5.00%) percent of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee.

Subject to the following provisions, Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other

2

sums due under the Note, the Mortgage or the Other Security Documents to and including the date of prepayment, upon giving ninety (90) days prior irrevocable written notice to Payee (a **"Prepayment Notice"**) or, if such prepayment shall be made earlier than ninety (90) days following the giving of the Prepayment Notice, with interest calculated to and including the date which is ninety (90) days following Payee's receipt of the Prepayment Notice, and upon the payment of a prepayment premium in an amount equal to:

(i)     Five (5%) percent of the amount prepaid if prepayment is made during the first (1st) Loan Year through the third (3rd) Loan Year;

(ii)    Four (4%) percent of the amount prepaid if prepayment is made during the fourth (4th) Loan Year through the sixth (6th) Loan Year;

(iii)   Three (3%) percent of the amount prepaid if prepayment is made during the seventh (7th) Loan Year through the ninth (9th) Loan Year;

(iv)    Two (2%) percent of the amount prepaid if prepayment is made during the tenth (10th) Loan Year through the twelfth (12th) Loan Year; and

(v)     One (1%) percent of the amount prepaid if prepayment is made during the thirteenth (13th) Loan Year through the fifteen (15th) Loan Year.

The prepayment premium shall also be paid in the event of an acceleration of the Debt resulting from any default or event by which, under the terms hereunder or under the Mortgage or under the Other Security Documents the Debt may or shall become due and payable.

Payee shall not be obligated to accept any prepayment of the Principal Balance from Maker unless it is accompanied by the applicable prepayment premium due in connection therewith.

Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note sets forth the entire agreement and understanding of Payee and Maker. Maker hereby waives presentment and demand for payment, notice of dishonor, protest or notice of protest of this Note.

This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns. If any payment under this Note is not made when due, Maker agrees to pay all costs of collection when incurred, including reasonable attorneys' fees, which costs shall be added to the amount due under this Note and shall be receivable therewith.

3

The indebtedness herein evidenced by this Note is secured by the Mortgage.

The terms of this Note shall be governed by and construed in accordance with the laws of the State of New York.

Maker does hereby agree that upon the occurrence of an Event of Default (as such capitalized term is defined in the Mortgage), or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four (24%) percent per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt; provided, nevertheless that if Maker shall fail to repay the Debt on or before the Maturity Date (whether by acceleration or otherwise), payment thereof, together with interest thereon calculated at the Default Rate from and after the Maturity Date, shall be made upon not less than ninety (90) days prior written notice by Maker to Payee, or if such payment shall be made earlier than ninety (90) days following the giving of such notice, interest on the Debt, calculated at the Default Rate, shall continue to accrue (and shall be payable) to and including the date which is ninety (90) days following Payee's receipt of Maker's said notice. This charge shall be added to the Debt, and shall be deemed secured by the Mortgage. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

No delay on the part of Payee in exercising any right or remedy under this Note, the Mortgage or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Mortgage and the Other Security Documents.

4

Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

All notices to be given under this Note shall be given in the same manner as provided in the Mortgage.

This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Maker hereby irrevocably and unconditionally waives, and Payee, by its acceptance of this Note, irrevocably and unconditionally waives, any and all right to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Note, the Mortgage or the Other Security Documents.

Maker, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily, with and upon the advice of competent counsel, (a) submits to personal jurisdiction in the State of New York over any suit, action or proceeding by any person arising from or relating to this Note or the Mortgage, (b) agrees that any such action, suit or proceeding may be brought in any State or Federal Court of competent jurisdiction sitting in New York County, New York, (c) submits to the jurisdiction of such courts, and (d) to the fullest extent permitted by law, agrees that Maker will not bring any action, suit or proceeding in any other forum (but nothing herein shall affect the right of the holder of this Note to bring any action, suit or proceeding in any other forum).  Maker further consents and agrees to service of any summons, complaint or other legal process in any such suit, action or proceeding by registered or certified U.S. Mail, postage prepaid, to Maker at the address set forth on page 1 hereof, and consents and agrees that such service shall constitute in every respect valid and effective service (but nothing herein shall affect the validity or effectiveness of process served in any other manner permitted by law).

**IN WITNESS WHEREOF,** Maker has duly executed this Note the day and year first above written.

F.R.J.D. CORP.

By: _Wenceslao Miranda_

Wenceslao Miranda, President

5

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )


On the 17th day of February, 2005, before me, the undersigned, personally appeared Wenceslao Miranda, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.


NOTARY PUBLIC

ROBERT LEVY
Notary Public, State of New York
No. 01LE6020453
Qualified in Nassau County
Commission Expires, March 8, 2007

6

EXHIBIT B

441207



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2005031001635001001E9E26

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 29 |
|---|---|

**Document ID:** 2005031001635001    **Document Date:** 02-17-2005    **Preparation Date:** 03-10-2005
**Document Type:** MORTGAGE
**Document Page Count:** 28

| PRESENTER: | RETURN TO: |
|---|---|
| CELTIC ABSTRACT INC. | EMIGRANT FUNDING CORPORATION |
| 501 SOUTH BROADWAY | 6 EAST 43RD STREET |
| HICKSVILLE, NY 11801 | NEW YORK, NY 10017 |
| 516-822-1234 | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 833 | 27 | Entire Lot | | 23 WEST 31 STREET |

**Property Type:** DWELLING ONLY - 4 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel ___ Page ____ *or* File Number_____

**PARTIES**

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| F.R.J.D. CORP. | EMIGRANT FUNDING CORPORATION |
| 23 WEST 31ST STREET | 6 EAST 43RD STREET |
| NEW YORK, NY 10001 | NEW YORK, NY 10017 |

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 177.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 150,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 150,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 750.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,500.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 375.00 | | |
| MTA: | $ | 375.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 3,000.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed    03-30-2005 12:42
City Register File No.(CRFN):
2005000183284

*Annette M Hill*

*City Register Official Signature*



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2005031001635001001E9E26 |

## RECORDING AND ENDORSEMENT COVER PAGE          PAGE 1 OF 29

| Document ID: 2005031001635001 | Document Date: 02-17-2005 | Preparation Date: 03-10-2005 |
|---|---|---|
| Document Type: MORTGAGE | | |
| Document Page Count: 28 | | |

**PRESENTER:**
CELTIC ABSTRACT INC.
501 SOUTH BROADWAY
HICKSVILLE, NY 11801
516-822-1234

**RETURN TO:**
EMIGRANT FUNDING CORPORATION
6 EAST 43RD STREET
NEW YORK, NY 10017

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 833 | 27 | Entire Lot | 23 WEST 31 STREET |

Property Type: DWELLING ONLY - 4 FAMILY

### CROSS REFERENCE DATA

CRFN_____  or  Document ID_____  or  _____  Year_____  Reel ___  Page_____  or  File Number_____

### PARTIES

**MORTGAGER/BORROWER:**
F.R.J.D. CORP.
23 WEST 31ST STREET
NEW YORK, NY 10001

**MORTGAGEE/LENDER:**
EMIGRANT FUNDING CORPORATION
6 EAST 43RD STREET
NEW YORK, NY 10017

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 177.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 150,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 150,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 750.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,500.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 375.00 | | |
| MTA: | $ | 375.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 3,000.00 | | |

**THIS MORTGAGE AND SECURITY AGREEMENT** (hereinafter referred to as the "**Mortgage**") made the 17th day of February, 2003, between **F.R.J.D. CORP.**, a New York corporation, having an address at 23 West 31st Street, New York, New York 10001 (hereinafter, the "**Mortgagor**"), and **EMIGRANT FUNDING CORPORATION**, a New York corporation having offices at 6 East 43rd Street, New York, New York 10017 (hereinafter, the "**Mortgagee**").

## W I T N E S S E T H :

**WHEREAS**, Mortgagor is the fee owner of the real property described in SCHEDULE A attached hereto (hereinafter, collectively, the "**Premises**");

**WHEREAS**, Mortgagor is the maker of that certain note of even date herewith in favor of Mortgagee (hereinafter, the "**Note**") in the principal sum of **ONE HUNDRED FIFTY THOUSAND and 00/100 ($150,000.00) DOLLARS**, together with interest (said principal sum, interest and all other sums which may or shall become due under the Note or under this Mortgage, being hereinafter, collectively, the "**Debt**"); and

**NOW, THEREFORE**, to secure to Mortgagee (a) repayment of the Debt and all renewals, modifications and extensions thereof; (b) payment of all other sums advanced in accordance with the terms of the Note or this Mortgage in order to protect the security hereof, together with interest thereon, and (c) performance of the agreements of Mortgagor contained herein, it is agreed as follows:

The Mortgagor does hereby mortgage, grant, convey and assign unto Mortgagee all of the right, title, interest and estate of Mortgagor, now owned, or hereafter acquired, in and to the following property, rights, interests and estates (such property, rights and interests being hereinbefore and hereinafter, collectively, the "**Mortgaged Property**"):

    (a)    the Premises;

    (b)    all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Premises (hereinafter, collectively, the "**Improvements**");

    (c)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of

*&Prem - Dwelling Only - 4 Family*

dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(d)  all machinery, equipment, fixtures (including but not limited to all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, nor or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter, collectively, the "**Equipment**"), and the right, title and interest of Mortgagor in and to any of the Equipment which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Mortgaged Property is located (hereinafter, the "**UCC**"), superior in lien to the lien of this Mortgage;

(e)  all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property;

(f)  all leases and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore now or hereafter entered into (hereinafter, collectively, the "**Leases**") and all rents, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements (hereinafter, collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(g)  all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property; and

(h)  the right, in the name and on behalf of Mortgagor, to

2

appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property.

**Mortgagor represents and warrants to and covenants and agrees
with Mortgagee as follows:**

SECTION 1.  **Payment of Debt and Incorporation of Covenants, Conditions and Agreements**.

Mortgagor will pay the Debt at the time and in the manner provided in the Note and in this Mortgage. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which wholly or partially secure or guaranty payment of the Note (collectively, the **"Other Security Documents"**), are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

SECTION 2.  **Application of Payments**.

Unless applicable law provides otherwise, all payments received by Mortgagee from Mortgagor under the Note or this Mortgage shall be applied by Mortgagee in the following order of priority: (i) amounts payable to Mortgagee by Mortgagor under Section 6 hereof; (ii) late charges payable under the Note; (iii) interest payable on the Note; (iv) principal of the Note; (v) interest payable on advances made pursuant to Section 24 hereof; (vi) principal of advances made pursuant to Section 24 hereof; and (vii) any other sums secured by this Mortgage in such order as Mortgagee, at Mortgagee's option, may determine; provided, however, that Mortgagee may, at Mortgagee's option, apply any sums payable pursuant to Section 24 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this Section 2.

SECTION 3.  **Warranty of Title**.

Mortgagor warrants that Mortgagor has good title to the Mortgaged Property and has the right to mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Mortgagor possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage. Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to

Mortgagee against the claims of all persons whomsoever.

SECTION 4. **Insurance**.

(a)    Mortgagor will keep the Mortgaged Property insured against loss or damage by fire, flood and such other hazards, risks and matters, including, without limitation, business interruption, rental loss, public liability, and boiler damage and liability, as Mortgagee may from time to time require in amounts required by Mortgagee, and shall pay the premiums for such insurance (collectively, the **"Insurance Premiums"**) as the same become due and payable. All policies of insurance (collectively, the **"Policies"**) shall be issued by insurers acceptable to Mortgagee and shall contain the standard New York mortgagee non-contribution clause naming Mortgagee as the person to which all payments made by such insurance company shall be paid. Mortgagor will assign and delivery the Policies to Mortgagee. Not later than thirty (30) days prior to the expiration date of each of the Policies, Mortgagor will deliver evidence satisfactory to Mortgagee of the renewal of each of the Policies.

(b)    In the event of loss, Mortgagor shall give immediate written notice to the insurance carrier and to Mortgagee. Mortgagor hereby authorizes and empowers Mortgagee as attorney-in-fact for Mortgagor to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Mortgagee's expenses incurred in the collection of such proceeds (said insurance proceeds, after such deduction of expenses, being hereinafter the **"Net Proceeds"**); provided, however, that nothing contained in this subsection (b) shall require Mortgagee to incur any expense or take any action hereunder. Mortgagor further authorizes Mortgagee, at Mortgagee's option, to apply the Net Proceeds to the payment of the sums secured by this Mortgage, whether or not then due, in such priority and proportions as Mortgagee in its discretion shall deem proper.

(c)    If the Net Proceeds are applied to the payment of the sums secured by this Mortgage, any such application of proceeds to principal shall neither extend or postpone the due dates of the monthly installments to be made pursuant to the Note, nor shall such application change the amounts of such installments. If the Mortgaged Property is sold pursuant to Section 23 hereof or if Mortgagee acquires title to the Mortgaged Property, Mortgagee shall have all of the right, title and interest of Mortgagor in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

(d)    The excess, if any, of the Net Proceeds remaining after payment of the entire Debt as provided herein shall be paid to Mortgagor.

4

of the following items in any order in its sole discretion:

(i)  Taxes and Other Charges;

(ii)  Insurance Premiums;

(iii)  Interest on the unpaid principal balance of the Note;

(iv)  Amortization of the unpaid principal balance of the Note;

(v)  All other sums payable pursuant to the Note, this Mortgage, and the Other Security Documents, including without limitation advances made by Mortgagee pursuant to the terms of this Mortgage.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt. The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee. No earnings or interest on the Escrow Fund shall be payable to Mortgagor.

## SECTION 7. Condemnation.

(a)  Mortgagor shall promptly notify Mortgagee of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Mortgaged Property or any part thereof, and Mortgagor shall appear in and prosecute any such action or proceeding unless otherwise directed by Mortgagee in writing. Mortgagor authorizes Mortgagee, at Mortgagee's option, as attorney-in-fact for Mortgagor, to commence, appear in and prosecute, in Mortgagee's or Mortgagor's name, any action or proceeding relating to any condemnation or other taking of the Mortgaged Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Mortgaged Property or any part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Mortgagee.

(b)  Mortgagor authorizes Mortgagee to apply such awards, payments, proceeds or damages, after the deduction of Mortgagee's expenses incurred in the collection of such amounts, at Mortgagee's option, either (i) to restoration or repair of the Mortgaged Property, or (ii) to payment of the sums secured by this Mortgage, whether or not then due, in the order of application set forth in Section 2 hereof, with the balance, if any, to Mortgagor. Mortgagor agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Mortgagee shall require.

(c)  Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay

6

SECTION 5.  **Payment of Taxes, etc.**

Mortgagor shall pay all taxes, assessments, water rates, frontage charges and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (collectively, the **"Taxes"**) and all ground rents, maintenance charges, other governmental impositions and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (collectively, the **"Other Charges"**) as same become due and payable. Mortgagor will deliver to Mortgagee, promptly upon Mortgagee's request, evidence satisfactory to Mortgagee that the Taxes and Other Charges have been so paid or are not then delinquent. Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility services provided to the Mortgaged Property. Mortgagor shall furnish to Mortgagee receipts for the payment of the Taxes, Other Charge and said utility services prior to the date the same shall become delinquent.

SECTION 6.  **Escrow Fund**.

Mortgagor shall pay to Mortgagee, on the first day of each calendar month for the term of this Mortgage, an amount equal to [a] one-twelfth (1/12) of the amount which would be sufficient to pay the Taxes and the Other Charges which are payable, or estimated by Mortgagee to be payable, during the next ensuing twelve (12) months, and, at the option of Mortgagee, plus [b] one-twelfth (1/12) of the amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in [a] and [b] above hereinafter collectively called the **"Escrow Fund"**). The Escrow Fund, together with the payments of interest or principal or both which are due pursuant to the provisions of the Note, shall be added together and shall be paid as an aggregate sum by Mortgagor to Mortgagee. Mortgagor hereby pledges to Mortgagee any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Escrow Fund to payments of Taxes, Other Charges and Insurance Premiums required to be made by Mortgagor pursuant to Sections 4 and 5 hereof. If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Sections 4 and 5 hereof, Mortgagee shall, in its discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If the Escrow Fund is not sufficient to pay the items set forth in [a] and [b] above, Mortgagor shall promptly pay to Mortgagee, upon demand, an amount which Mortgagee shall estimate as sufficient to make up the deficiency. Upon the occurrence of an Event of Default (hereinafter defined) Mortgagee may apply any sums then present in the Escrow Fund to the payment

5

the Debt at the time and in the manner provided for its payment in the Note and in this Mortgage, and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Mortgagee, after the deduction of expenses of collection, to the reduction or discharge of the Debt. Mortgagee shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note. Mortgagee may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable. Any reduction, in whole or in part, of the Debt pursuant to the terms of this Section 7 shall be deemed a prepayment of the Debt, and prepayment consideration under Section 20 hereof and the Note, if any, shall be due on the amount of the Debt so reduced. Nothing in this Section 7(c) shall be deemed to constitute authorization to prepay the Debt in part except under the circumstances set forth in this Section 7. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such award or payment, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt.

SECTION 8. **Leases and Rents.**

(a)    Mortgagor hereby assigns to Mortgagee all Leases now existing or hereafter made of all or any part of the Mortgaged Property, all Rents payable under such Leases , and all security deposits made by tenants in connection with such Leases. Mortgagor hereby grants Mortgagee all of the rights and powers possessed by Mortgagor prior to such assignment, and Mortgagee is hereby granted the right to modify, extend or terminate the Leases and to execute new Leases, in Mortgagee's sole discretion. Mortgagee is hereby granted and assigned by Mortgagor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this Mortgage constituting a present, absolute assignment of the Leases and the Rents. Nevertheless, subject to the terms of this Section 8, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon or at any time after an Event of Default, the license granted to Mortgagor herein may be revoked by Mortgagee, and Mortgagee may enter upon the Mortgaged Property, and collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

(b)    All Leases shall be written on the standard form of lease which has been approved by Mortgagee. Upon request, Mortgagor shall furnish Mortgagee with executed copies of all Leases. No changes may be made to the Mortgagee-approved standard lease without the prior written consent of Mortgagee. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates, which, in the case of residential Leases, shall not be in excess of the

7

local registered rent for the apartment to which the Lease relates, and shall be arms-length transactions. All proposed Leases shall be subject to the prior approval of the Mortgagee. All Leases shall provide that they are subordinate to this Mortgage and that the lessee agrees to attorn to Mortgagee. Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notice of default which Mortgagor shall send or receive thereunder; (iii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (vi) shall not alter, modify or change the terms of the Leases without the prior written consent of Mortgagee, or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (vii) shall not alter, modify or change the terms of any guaranty of the Leases or cancel or terminate such guaranty without the prior written consent of Mortgagee; (viii) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (ix) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require. Mortgagee shall have all of the rights against lessees of the Mortgaged Property set forth in Section 291-f of the Real Property Law of New York.

SECTION 9.  **Maintenance of Mortgaged Property**.

Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair. The Improvements and the Equipment shall not be removed, demolished or altered (except for normal replacement of the Equipment) without the consent of Mortgagee. Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property or the use thereof. Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn or dilapidated, or which may be affected by any proceeding of the character referred to in Section 7 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises. Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee.

8

SECTION 10. **Transfer or Encumbrance of the Mortgaged Property.**

(a)     Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness of Mortgagor and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt. Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property. Mortgagor shall not, without the prior written consent of Mortgagee, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b)     A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Section 10 shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, any Guarantor (hereinafter defined), or any general partner of Mortgagor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or an interest in any entity directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock by which any of such corporation's stock shall be vested in a party or parties who are not now stockholders; (iv) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner or managing partner or the transfer of the partnership interest of any general partner or managing partner; and (v) if Mortgagor, any Guarantor or any member of Mortgagor or any Guarantor is a limited liability company, the change, removal or resignation of a member or manager or the transfer of an interest of any member or manager.

(c)     Mortgagee reserves the right to condition the consent required hereunder upon a modification of the terms hereof and on assumption of this Mortgage as so modified by the proposed transferee, payment of a transfer fee, or such other conditions as Mortgagee shall determine in its sole discretion to be in the interest of Mortgagee. Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and

9

payable upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Mortgagee's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

SECTION 11. **Estoppel Certificates**

(a)    After request by Mortgagee, Mortgagor, within ten (10) days, shall furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note and this Mortgage are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

(b)    After request by Mortgagee, Mortgagor, within ten (10) days, will furnish Mortgagee with estoppel certificates from any lessees under the Leases as required by their respective Leases.

SECTION 12. **Changes in the Laws Regarding Taxation**.

If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereof, if any. In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

SECTION 13. **No Credits on Account of the Debt**.

Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

SECTION 14. **Documentary Stamps**.

      If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

SECTION 15. **Usury Laws**.

      This Mortgage and the Note are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the Debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by applicable law to contract or agree to pay. If by the terms of either this Mortgage or the Note, Mortgagor is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

SECTION 16. **Books and Records**.

      (a)     The Mortgagor (and Guarantors, if any) shall keep proper books, records and accounts with respect to the operation of the Mortgaged Property in accordance with generally accepted accounting principles and shall furnish to the Mortgagee (i) within ninety (90) days after the end of each fiscal year of Mortgagor and at any other time upon Mortgagee's request, financial statements for the operation of the Mortgaged Property, including a balance sheet, a statement of income and expenses of the Mortgaged Property and a statement of changes in financial position, each in reasonable detail and certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete, and, if Mortgagee shall require audited by an independent certified public accountant; (ii) within thirty (30) days following the close of each calendar quarter, quarter-annual financial statements (including a certified rent roll) in form satisfactory to the Mortgagee, which shall disclose in reasonable detail all earnings and expenses with respect to the operation of the Mortgaged Property certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete; (iii) together with the foregoing financial statements and at any other time upon Mortgagee's request, a rent schedule for the Mortgaged Property in form acceptable to Mortgagee, certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete, showing the name of each tenant, the space occupied, the Lease expiration date, the rent payable, the rent paid and any other information requested by

Mortgagee; (iv) upon Mortgagee's request, financial statements for any principal of Mortgagor and Guarantor in the form set forth above; (v) upon Mortgagee's request, an accounting of all security deposits held in connection with any Lease of any part of the Mortgaged Property, including the name and identification number of the accounts in which such security deposits are held, name and address of the financial institutions in which such security deposits are held and the name of the person to contact at such financial institutions, along with any authority or release necessary for Mortgagee to obtain information regarding such accounts directly from such financial institutions; and (vi) such other financial information as Mortgagee may request.

(b)    Upon the death of any Guarantor who is an individual, Mortgagor shall give prompt written notice to Mortgagee (i.e., at least within thirty (30) days following such Guarantor's death), setting forth the date of death, the state and county where the deceased Guarantor's estate is being administered, and, if then known, the name(s) and address(es) of the executor(s) or administrator(s) appointed to administer the estate of such deceased Guarantor.

SECTION 17. **Performance of Other Agreements**.

Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

SECTION 18. **Further Acts, etc.**

Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Mortgagor, on demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Section 18.

SECTION 19. **Recording of This Mortgage, etc.**

Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgement of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property, and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

SECTION 20. **Prepayment**.

The Debt may not be prepaid in whole or in part except in accordance with the terms and conditions contained in the Note.

SECTION 21. **Events of Default**.

The Debt shall become immediately due and payable at the option of Mortgagee upon any one or more of the following events (each being an "**Event of Default**", and, collectively, "**Events of Default**"):

(a)    if any portion of the Debt is not paid within ten (10) days after the date when the same is due and payable;

(b)    if any of the Taxes or Other Charges are not paid when the same are due and payable;

(c)    if the Policies are not kept in full force and effect, or if the Policies are not assigned and delivered to Mortgagee upon request;

(d)    if Mortgagor violates or does not comply with any of the provisions of Sections 3, 7, 8, 9, 10, 11, 14, 19, 35 or 36;

13

(e) if any representation or warranty of Mortgagor, or of any person guaranteeing payment of the Debt or any portion thereof or performance by Mortgagor of any of the terms of this Mortgage (a **"Guarantor"**), made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

(f) if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as the become due;

(g) if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within thirty (30) days;

(h) if Mortgagor shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property whether it be superior or junior in lien to this Mortgage;

(i) if the Mortgaged Property becomes subject to any mechanic's, materialman' or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) within ten (10) days;

(j) if Mortgagor fails to cure promptly any violations of laws or ordinances affecting or which may be interpreted to affect the Mortgaged Property; or

(k) if for more than ten (10) days after notice from Mortgagee, Mortgagor shall continue to be in default under any other term, covenant or condition of the Note, this Mortgage or the Other Security Documents.

SECTION 22. **Remedies of Mortgagee**.

Upon the occurrence of any Event of Default, (a) Mortgagor will pay, from the

14

date of that Event of Default and until the entire Debt is paid in full, whether prior to or subsequent to the entry of a judgment of foreclosure and sale and the satisfaction of any deficiency judgment, interest on the unpaid principal balance of the Note at the rate of twenty-four (24%) percent per annum or at the maximum interest rate which Mortgagor may by law pay, whichever is lower, (the **"Default Rate"**); provided, nevertheless, that if Mortgagor shall fail to repay the Debt on or before the Maturity Date (as defined in the Note), whether by acceleration or otherwise, payment thereof, together with interest thereon calculated at the Default Rate from and after the Maturity Date, shall be made upon not less than ninety (90) days prior written notice by Mortgagor to Mortgagee, or if such payment shall be made earlier than ninety (90) days following the giving of such notice, interest on the principal sum, calculated at the Default Rate, shall continue to accrue (and shall be payable) to and including the date which is ninety (90) days following Mortgagee's receipt of Mortgagor's said notice, and the foregoing shall not be deemed to extend the Maturity Date; and (b) Mortgagee shall have the right to exercise any and all rights and remedies available hereunder and at law and in equity, including the right, when authorized by law, to sell the Mortgaged Property by the exercise of the power of sale hereby granted to Mortgagee and to foreclose the Mortgage by a non-judicial proceeding in the manner prescribed in Article 14 of the Real Property Actions and Proceedings Law, as the same may be amended and be in effect upon the occurrence of an Event of Default hereunder.

SECTION 23. **Sale of Mortgaged Property**.

(a)    If the Mortgaged Property consists of two or more distinct parcels and this Mortgage is foreclosed, whether pursuant to the power of sale herein granted to Mortgagee, or otherwise, the Mortgaged Property, or any interest therein, may, at the discretion of Mortgagee, be sold in one or more parcels or in several interests or portions and in any order or manner as Mortgagee may elect and specify in the notice of sale.

(b)    If the indebtedness secured by this Mortgage is also secured by one or more other mortgages on property consisting of more than one functionally separate and distinct property and an Event of Default occurs under this Mortgage or under any such other mortgage which is cross-defaulted with this Mortgage, upon a foreclosure of this Mortgage and such other mortgages, whether pursuant to a power of sale or otherwise, the Mortgaged Property, or any interest therein, and the property encumbered by such other mortgages may, at the discretion of Mortgagee, be sold in the order designated by Mortgagee in the notice of sale.

SECTION 24. **Right to Cure Defaults**.

Upon the occurrence of any Event of Default, or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may

15

deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose the Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest, shall constitute a portion of the Debt and shall be due and payable to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period from the date that such cost or expense was incurred by Mortgagee to the date of payment to Mortgagee, as provided in Section 22 hereof. All such costs and expenses incurred by Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Mortgagee therefor.

SECTION 25. **Late Payment Charge.**

If any portion of the Debt is not paid within ten (10) days after the date when due, Mortgagor shall pay to Mortgagee upon demand an amount equal to five (5%) percent of such unpaid portion of the Debt, to defray the expense incurred by Mortgagee in handling and processing such delinquent payment and to compensate Mortgagee for the loss of the use of such delinquent payment, and such amount shall be secured by this Mortgage and the Other Security Documents.

SECTION 26. **Prepayment After Event of Default**.

If following the occurrence of any Event of Default, Mortgagor shall tender payment of an amount sufficient to satisfy the Debt in whole or in part at any time prior to a foreclosure sale of the Mortgaged Property, and if at the time of such tender prepayment of the principal balance of the Note is not permitted by the Note, Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee a sum equal to interest which would have accrued on the principal balance of the Note at the interest rate set forth in the Note from the date of such tender to the earlier of (i) the Maturity Date as defined in the Note, and (ii) the first day of the period during which prepayment of the principal balance of the Note would have been permitted together with a prepayment consideration equal to the prepayment consideration which would have been payable as of the first day of the period during which prepayment would have been permitted. If at the time of such tender prepayment of the principal balance of the Note is permitted, such tender by Mortgagor shall be deemed to be a voluntary prepayment of the principal balance of the Note, and Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee the applicable prepayment consideration specified in the Note and this Mortgage.

16

SECTION 27. **Reasonable Use and Occupancy.**

In addition to the rights which Mortgagee may have herein, upon the occurrence of any Event of Default, Mortgagee, at its option, may require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Mortgagor or may require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise.

SECTION 28. **Right of Entry.**

Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all times.

SECTION 29. **Appointment of Receiver.**

Mortgagee, upon the occurrence of an Event of Default or in any action to foreclose this Mortgage or upon the actual or threatened waste to any part of the Mortgaged Property, shall be entitled to the appointment of a receiver without notice and without regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person liable for the payment of the Debt.

SECTION 30. **Security Agreement.**

This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the UCC. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor, by executing and delivering this Mortgage, has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the UCC (said portion of the Mortgaged Property so subject to the UCC being called in this Section 30 the "**Collateral**"). If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing

17

its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

Mortgagor hereby gives to Mortgagee a continuing lien on, security interest in and right of set-off against all moneys, securities and other property of Mortgagor and the proceeds thereof, now on deposit or now or hereafter delivered, remaining with or in transit in any manner to Mortgagee, its correspondents, participants or its agents from or for Mortgagor, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into possession of Mortgagee in any way, and also, any balance of any individual deposit account and credits of Mortgagor with, and any and all claims of Mortgagor against Mortgagee, at any time existing, as collateral security for the payment of the Debt and all of the other obligations of the Mortgagor under this Mortgage, including fees, contracted with or acquired by Mortgagee, whether joint, several, absolute, contingent, secured, matured or unmatured (for the purposes of this Section 30, collectively, the **"Liabilities"**), hereby authorizing Mortgagee at any time or times, without prior notice, to apply such balances, credits or claims, or any part thereof, to the Liabilities in such amounts as it may select, whether contingent, unmatured or otherwise, and whether any collateral security therefore is deemed adequate or not. The collateral security described herein shall be in addition to any collateral security described in any separate agreement executed in connection with this Mortgage.

SECTION 31. **Actions and Proceedings**.

Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect is interest in the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

SECTION 32. **Waiver of Counterclaim**.

Mortgagor hereby waives the right to assert a counterclaim in any action or proceeding brought against it by Mortgagee, and waives trial by jury in any action or proceeding brought by either party hereto against the other or in any counterclaim asserted by Mortgagee against Mortgagor, or in any matters whatsoever arising out of or in any way connected with this Mortgage, the Note, any of the Other Security Documents or the Debt.

18

SECTION 33. **Marshalling and Other Matters**.

Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of the Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

SECTION 34. **Recovery of Sums Required To Be Paid**.

Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

SECTION 35. **Hazardous Materials**.

Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, after due inquiry and investigation, (a) there are no "Hazardous Materials" (as such quoted term is hereinafter defined) on the Mortgaged Property, and (b) no owner or occupant nor any prior owner or occupant of the Mortgaged Property has received any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property. Mortgagor covenants that the Mortgaged Property shall be kept free of Hazardous Materials, and neither Mortgagor nor any occupant of the Mortgaged Property shall use, transport, store, dispose of or in any manner deal with Hazardous Materials on the Mortgaged Property. Mortgagor shall comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules and regulations. In the event that Mortgagor receives any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Hazardous Materials from the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations. The term **"Hazardous Materials"** as used in this Mortgage shall include, without limitation,

19

asbestos, gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials, or any other substance or material defined as a hazardous or toxic substance or material by any federal, state or local law, ordinance, rule or regulation. The obligations and liabilities of Mortgagor under this Section 35 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

SECTION 36. **Indemnification**.

Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the failure of any person to file timely with the Internal Revenue Service an accurate From 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) any claim for brokerage fees or other consideration from any broker in connection with the loan secured by this Mortgage; (h) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials, from, or affecting the Mortgaged Property or any other property; (i) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials; (j) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials; or (k) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses. Any amounts payable to Mortgagee by reason of the application of this Section 36 shall become immediately due and shall bear interest at the Default Rate from the date loss or damage is sustained by Mortgagee until paid. The obligations of Mortgagor under this Section 36 shall survive any termination, satisfaction, assignment, entry of judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

20

SECTION 37. **Notices**.

Except for any notice required under applicable law to be given in another manner, (a) any notice to Mortgagor provided for in this Mortgage or in the Note shall be given in writing by mailing such notice by certified mail, return receipt requested, or by sending such notice by a recognized overnight courier with postage, freight and any other charges paid, with a receipt therefor, addressed to Mortgagor at Mortgagor's address stated herein or at such other address as Mortgagor may designate by notice to Mortgagee as provided herein, and (b) any notice to Mortgagee shall be given in writing by mailing such notice certified mail, return receipt requested, or by sending such notice by a recognized overnight courier, with postage, freight and other charges paid, with a receipt therefor, addressed to Mortgagee at Mortgagee's address stated herein or to such other address as Mortgagee may designate by notice to Mortgagor as provided herein, with a copy of same given in the manner herein provided to Robert F. Liner, Esq., Stark, Amron & Liner, LLP, Seven Penn Plaza, Suite 600, New York, New York 10001. Except for any notice deemed under applicable law to have been given at a different time, any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee on the earlier of (a) the second day after such notice is mailed or deposited with a courier in a manner designated herein or (b) the day such notice is actually received.

SECTION 38. **Authority**.

(a)     Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage, and to mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

(b)     Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

SECTION 39. **Consent to Jurisdiction**.

Mortgagor, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily, with and upon the advice of competent counsel, (a) submits to personal jurisdiction in the State of New York over any suit, action or proceeding by any person arising from or relating to the Note or this Mortgage, (b) agrees that any such action, suit or proceeding may be brought in any State or Federal Court of competent jurisdiction sitting in New York County, New York, (c) submits to the jurisdiction of such courts, and

(d) to the fullest extent permitted by law, agrees that Mortgagor will not bring any action, suit or proceeding in any other forum (but nothing herein shall affect the right of the holder of the Note to bring any action, suit or proceeding in any other forum). Mortgagor further consents and agrees to service of any summons, complaint or other legal process in any such suit, action or proceeding by registered or certified U.S. Mail, postage prepaid, to Mortgagor at the address set forth on page 1 hereof, and consents and agrees that such service shall constitute in every respect valid and effective service (but nothing herein shall affect the validity or effectiveness of process served in any other manner permitted by law).

SECTION 40. **Participation**.

Mortgagor acknowledges that Mortgagee may sell and assign participation interests in this Mortgage to one or more domestic or foreign banks, insurance companies, pension funds, trusts or other institutional lenders or other persons, parties or investors (including, but not limited to, grantor trusts, owner trusts, special purpose corporations, REMICs, real estate investment trusts or other similar or comparable investment vehicles as may be selected by Mortgagee in its sole and absolute discretion) on terms and conditions satisfactory to Mortgagee in its sole and absolute discretion. Mortgagor grants to Mortgagee, and shall cause each Guarantor and other person or party associated or connected with this Mortgage or the Collateral therefore to grant to Mortgagee the right to distribute on a confidential basis financial and other information concerning Mortgagor, each such Guarantor and other person or party and the property encumbered by this Mortgage and any other pertinent information with respect to this Mortgage to any party who has purchased a participation interest in this Mortgage or who has expressed an interest in purchasing a participation interest in this Mortgage.

SECTION 41. **Waiver of Notice**.

Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

SECTION 42. **Remedies of Mortgagor**.

In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Mortgage or the Other Security Documents, it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's

remedies shall be limited to injunctive relief or declaratory judgment.

SECTION 43. **Sole Discretion of Mortgagee**.

Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

SECTION 44. **Non-Waiver**.

The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantors to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage, or the Other Security Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

SECTION 45. **Security Deposits and Operating Accounts**.

Mortgagor shall establish and maintain the following accounts with Mortgagee, Emigrant Savings Bank or other institution satisfactory to Mortgagee: (1) a rent security account, to which shall be transferred and maintained all tenant security deposits delivered to Mortgagor in connection with the Leases affecting the Mortgaged Property, and (2) Mortgagor's operating account with respect to the Mortgaged Property.

23

SECTION 46. **No Oral Change**.

This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

SECTION 47. **Liability**.

If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

SECTION 48. **Inapplicable Provisions**.

If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

SECTION 49. **Headings, etc.**

The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

SECTION 50. **Duplicate Originals**.

This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

SECTION 51. **Definitions**.

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "**Mortgagor**" shall mean "**each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein**", the word "**Mortgagee**" shall mean "**Mortgagee and any subsequent holder of the Note**", the word "**person**" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "**Mortgaged Property**" shall include any portion of the Mortgaged Property and any interest therein. Whenever the context may

24

require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

SECTION 52. **Trust Fund**.

Pursuant to Section 13 of the Lien Law of the State of New York, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

SECTION 53. **Commercial Property**.

Mortgagor represents that this Mortgage does not encumber real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units, each having its own separate cooking facilities.

SECTION 54. **Construction**.

This Mortgage shall be governed by and construed in accordance with the laws of the State of New York and the applicable laws of the United States of America.

SECTION 55. **Purpose of Loan**.

The Mortgagor represents to Mortgagee that the loan evidenced by the Note and secured by this Mortgage ("Loan") is for business or commercial purposes only and not for personal, family, consumer or household purposes. Mortgagor acknowledges that Mortgagee has made the Loan to Mortgagor in reliance upon the above representation by Mortgagor. The above representation by Mortgagor will survive the closing and repayment of the Loan.

**IN WITNESS WHEREOF,** Mortgagor has executed this Mortgage the day and year first above written.

F.R.J.D. CORP.

By: _____

Wenceslao Miranda, President

25

STATE OF NEW YORK    )
                       )ss.:

COUNTY OF NEW YORK  )

On the 17th day of February, 2005, before me, the undersigned, personally appeared Wenceslao Miranda, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

ROBERT LEVY
Notary Public, State of New York
No. 01LE6020493
Qualified in Nassau County
Commission Expires, March 8, 2007

26

## EXHIBIT A
### Legal Description

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 31st Street, distant 350 feet westerly from the northwesterly corner of 5th Avenue and 31st Street;

RUNNING THENCE northerly and parallel with 5th Avenue, 98 feet 9 inches;

THENCE westerly parallel with the northerly side of 31st Street, 25 feet;

THENCE southerly again parallel with 5th Avenue, 98 feet 9 inches to the northerly side of 31st Street; and

RUNNING THENCE easterly along the northerly side of 31st Street, 25 feet to the point or place of BEGINNING.

SAID premises being known as 23 West 31st Street, New York, New York.

**F.R.J.D. CORP.**
(Mortgagor)

– to –

**EMIGRANT FUNDING CORPORATION**
(Mortgagee)

## MORTGAGE AND SECURITY AGREEMENT

Dated:  February 17, 2005

Premises:  23 West 31st Street, New York, New York

The within Premises lie in
Section: 3, Block: 833, Lot: 27
in New York County

RECORD AND RETURN TO:

EMIGRANT FUNDING CORPORATION
6 EAST 43RD STREET
NEW YORK, NEW YORK  10017
ATT.:  MS. ANNMARIE JOYCE

28

AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK      )
                               .ss:
COUNTY OF NEW YORK    )

        Linda Young, being duly sworn say; I am a secretary in the office of Maria J. Zetes, the attorney or the within named Emigrant Funding Corporation herein. That on the 19th day of August, 2008, I served Emigrant Funding Corporation's Non-Party Claim by depositing a true copy of the enclosed in a postpaid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at her last known address set forth after her name:

        Michael J. Garcia, United States Attorney for the Southern District of New York, Attn: Anna E. Arreola, Assistant U.S. Attorney, Attorney for Plaintiff, at One St. Andrew's Plaza, New York, New York 10007.

        Deponent is over the age of twenty-one years.

                                            LINDA YOUNG

Sworn to before me this
19th day of August, 2008.

Notary Public

KATRINA NEWELL
Notary Public, State of New York
No. 01NE6133071
Qualified in Queens County
Commission Expires September 6, 20 09

Index No.       08 CV 3049       Year

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-against-

REAL PROPERTY AND PREMISES LOCATED AT
23 WEST 31st STREET, NEW YORK, NY, et al.

Defendants.

NON-PARTY CLAIM

Signature (Rule 130-1.1-a)

_____
Print name beneath

Maria J. Zetes
Attorney for    Emigrant Funding Corporation
Office and Post Office Address, Telephone
5 East 42nd Street
New York, New York  10017
(212) 850-4852

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated

.................................................

Attorney(s) for

---

NOTICE OF ENTRY

PLEASE take notice that the within is a (certified)
true copy of a
duly entered in the office of the clerk of the within
named court on

Dated,

Yours, etc.

Attorney for

Office and Post Office Address

To

Attorney(s) for

---

NOTICE OF SETTLEMENT

PLEASE take notice that an order
of which the within is a true copy will be presented
for settlement to the Hon.
one of the judges of the within named Court, at
at                                    on
Dated,
M.
Yours, etc.

Attorney for

Office and Post Office Address

To

Attorney(s) for